# EXHIBIT A

# MORRIS AND CLEMM, P.C.

ROBERT F. MORRIS*
MARK C. CLEMM
SETH D. WILSON†
NICOLE M. THOMPSON†

OF COUNSEL
STEPHEN G. YUSEM

†Also admitted in New Jersey

527 Plymouth Road, Suite 416
Plymouth Meeting, PA 19462-1641
(610) 825-0500
Toll Free (866) 449-0411
Fax (610) 834-1776
www.morrisclemm.com

syusem@morrisclemm.com

February 4, 2010

## CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Ms. Lisa P. Jackson
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Mr. Shawn M. Garvin
Regional Administrator
U.S. Environmental Protection Agency
Region 3
1650 Arch Street (3PM52)
Philadelphia, PA 19103-2029

Eric H. Holder, Jr., Esquire
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Mr. John Hanger
Secretary
Pennsylvania Department of
Environmental Protection
Rachel Carson State Office Building
Post Office Box 2063
Harrisburg, PA 17105-2063

Ms. Rachel Diamond
Regional Director
Southeast Regional Office
Pennsylvania Department of
Environmental Protection
2 East Main Street
Norristown, PA 19401

Mr. Richard Kadwill
District Manager
Montgomery County Conservation District
143 Level Road
Collegeville, PA 19426

Re:    Notice of Intent to Sue Under the Clean Water Act and the Clean Streams Law

Ladies and Gentlemen:

Pursuant to 33 U.S.C. §§1365(a)(1), 1365(b) and 35 P.S. §601(e), this Notice of Intent to Sue is provided to inform you of violations of the Clean Water Act, 33 U.S.C. §1251 et seq. ("CWA"), the Clean Streams Law, 35 P.S. §691.1 et seq. ("CSL") and NPDES Permit No. No. PAG-20046052004-1 ("the Permit") issued to Lower Merion School District, Ardmore, Pennsylvania ("LMSD"), on November 15, 2006 by the Pennsylvania Department of Environmental Protection ("DEP").



* Board Certified Civil Trial Specialist by The National Board of Trial Advocacy, A Pennsylvania Supreme Court Accredited Agency

February 4, 2010
Page Two

This firm represents Beaumont at Bryn Mawr, 601 North Ithan Avenue, Bryn Mawr, PA ("Beaumont"), a non-profit age restricted residential community comprising 50 acres and having 200 residences ("the Beaumont Property").

LMSD is the owner of a tract of land of approximately 50 acres located on the northerly side of North Ithan Avenue in Lower Merion Township ("the LMSD Property"). In 2007, LMSD commenced construction on the LMSD Property of a new Harriton High School campus to replace the pre-existing Harriton High School campus. The LMSD Property, situated within a residential setting, slopes and drains downward to the south-southwest toward North Ithan Avenue and the Beaumont Property which is located on the southerly side of North Ithan Avenue abutting the LMSD Property. Flowing through the LMSD Property is a headwater tributary of Mill Creek which flows from the LMSD Property through the Beaumont Property. Mill Creek is classified as Impaired Waters under CWA §303(d) and is a tributary of the Schuylkill River.

In 1986, Beaumont constructed a detention basin on the Beaumont Property ("the Pond") for the purpose of receiving increased surface water runoff resulting from the development of the Beaumont Property. As a condition for construction of the Pond, Lower Merion Township ("the Township") required that Beaumont maintain the Pond with a center depth of 8 feet and respective inlet and outlet depths of 7 feet. The sources of the water received into the Pond are the aforementioned Mill Creek tributary flowing from the LMSD Property and a small spring on the Beaumont Property.

In 1996, Beaumont engaged F.X. Browne, Inc., a reputable firm of engineers, planners and scientists, to investigate the status of the Pond and the tributary that feeds it. By letter dated May 5, 1999, that firm advised:

The severely eroded channels between North Ithan Avenue and the stormwater pond appear to have been created at a result of the uncontrolled increase and discharge of stormwater from the watershed area north of North Ithan Avenue (the majority of which is property of Harriton High School). Control of stormwater was likely not regulated when Harriton High School and its existing facilities were constructed.

* * * *

The primary and only significant source of the sediments appears to be from the erosion of the channels. Materials eroded from within the channels have been deposited into the pond during stormflow events. These sediments may be mechanically dredged using a large backhoe by lowering the water level of the pond to expose the sediments.

Consequently, in 2001, Beaumont dredged the Pond to its 1986 compliant dimensions.

February 4, 2010
Page Three

On or about August 10, 2005, LMSD filed a Subdivision/Land Development Application with the Township based on a tentative sketch plan.  On or about May 5, 2006, LMSD filed a Subdivision/Land Development Application with the Township based on a Preliminary Land Development Plan.  On June 28, 2006, the Township conditionally approved an LMSD Preliminary Land Development Plan dated June 16, 2006 ("the Plan").  In connection with obtaining Township Conditional Approval for the Plan, LMSD filed an Erosion and Sedimentation Control Plan with the Township calling for the construction of two detention basins, the easterly basin being called Basin A and the westerly basin being called Basin B.  Attached hereto as Exhibit A is a letter from the Township to LMSD dated August 11, 2006 evidencing said Conditional Approval and noting Stormwater Management and Hydrologic Conditions Nos. 17 through 29 as well as Condition No. 60 requiring LSMD to comply with all Township ordinances.

On or about July 13, 2006, LMSD filed a Notice of Intent for Individual NPDES Permit for Stormwater Discharge Associated with Construction Activities ("NOI"), paragraph 10 of which summarizes Erosion and Sedimentation Control Best Management Practices ("BMPs") to include rock construction entrances, sediment basins, silt fencing, inlet protection and slope protection matting to control sediment pollution before, during and after earth disturbance.  Accordingly, on or about November 15, 2006, DEP issued the Permit to LMSD, being a General NPDES Permit for Stormwater Discharges Associated with Construction Activities.  Copies of the aforementioned NOI and the Permit are attached hereto and collectively marked as Exhibit B.

In or about January, 2009, LMSD submitted to the Township a plan entitled "New Construction and Demolition Project at: Harriton High School for the Lower Merion School District, Additional E&S Controls Plan – Phase 2A thru 2D" dated January 5, 2009.

In violation of Condition No. 24 of the aforesaid Conditions of Approval, LMSD has not properly managed the surface water runoff crossing the LMSD Property onto the Beaumont Property with the result that the water quality and quantity during the construction of the new Harriton High School has adversely impacted, and continues to adversely impact, the Beaumont Property.

In violation of Condition No. 60 of the Conditions of Approval, LMSD has failed to comply with Chapter 121 of the Township Code, entitled "Stormwater Management and Erosion Control" in the following particulars:

a.     in violation of §121-4A(14)(a), LMSD has not properly and accurately submitted to the Township an analysis of the impacts of the value and timing of stormwater flows, including the hydrologic and hydraulic calculations necessary to determine the impact of the stormwater discharge on the first downstream tributary, being Mill Creek, the drainage area of which exceeds the drainage area contributing to Basins A and B;

February 4, 2010
Page Four

     b.    in violation of §121-4A(14)(b), LMSD has failed to reduce the discharge rates of Basins A and B notwithstanding the fact that the designated release rate for said Basins has resulted, and continues to result, in an increase in stream channel erosion on the Beaumont Property and an increase in sediment-laden stormwater discharge to the Pond;

     c.    in violation of §121-4E(1)(d), LMSD has failed to properly paint a red line on riser pipes at the maximum level to indicate when cleanout of sediment storage is required;

     d.    in violation of §121-4F(15(a) and §121-23, LMSD has failed to obtain the written approval of Beaumont notwithstanding the fact that LMSD's construction of the new Harriton High School has concentrated the natural flow of storm drainage in such a way as to adversely affect the Beaumont Property, and said §121-4F(15)(a) provides that approval of plans by the Township does not authorize drainage affecting adjoining properties;

     e.    in violation of §121-5A(2), LMSD has permitted exposure of bare areas in excess of 20 days;

     f.    in violation of §121-5A(5), LMSD has failed to properly employ temporary erosion control measures, and the construction areas and contained silt have not been, and are not currently, stabilized nor is the lawn area established;

     g.    in violation of §121-5A(6), the slopes of Basin A exceed 25% and are not properly sodded or stabilized with erosion control netting;  and

     h.    in violation of §121-5A(7), LMSD has failed to conduct routine end-of-day checks during construction to assure that all control measures are working properly;  LMSD has failed to implement effective erosion and sedimentation control measures; and adverse discharge of sediment and other solid material and pollutants from the LMSD Property onto the Beaumont Property continues as a result of stormwater runoff in violation of the aforementioned Erosion and Sedimentation Plan submitted by LMSD to the Township.

     Contrary to the aforementioned January 5, 2009 "Additional E&S Controls Plan – Phase 2A thru 2D" submitted by LMSD to the Township, LMSD has failed, and continues to fail to:

     a.    properly install construction entrances in locations indicated on Plan Sheets ES-1 and ES-2;

     b.    properly install silt fencing in the areas indicated on Plan Sheets ES-1 and ES-2;

     c.    install cleanout stakes in Basins A and B;

     d.    stabilize Basins A and B;

February 4, 2010
Page Five

e.     install storm sewer system from Inlet 3-34 to Endwall 3-38 in Basin B;

f.     block flared end of Section 3-41 in Basin B;

g.     install the portion of the waterline from North Ithan Avenue through Basin A;

h.     install storm system from Manhole 2.6-23 to Endwall 2.6-30 in Basin A;

i.     block Endwall 2.6-40 in Basin A;

j.     install super silt fences and baffles in Basins A and B;

k.     stop the conveyance of sediment through unprotected drop inlets and storm sewers;

l.     properly maintain standard filter fabric fences, 18 inches high, along the south sides of Basins A and B;  and

m.     properly maintain rock construction entrances on either side of the North Ithan Avenue entrance to the LMSD Property including wheel wash facilities for vehicles exiting the LMSD Property.

Throughout the new Harriton High School construction process, LMSD's erosion and sedimentation practices have been deficient or non-existent as they pertain to the Beaumont Property. As a result of the aforementioned violations, stormwater runoff from the LMSD Property flows by point source discharge and overland flow of pollutants onto the Beaumont Property in general and into the tributary to the Pond in particular causing siltation and eutrophication of the Pond.

If the U.S. Environmental Protection Agency and/or DEP do not diligently take action to compel LMSD to comply with the terms and conditions of the Conditions of Approval, the ordinances of LMSD and the Permit, Beaumont will request that a court of competent jurisdiction order LMSD to immediately and properly comply with all such requirements and conditions.  Beaumont will also seek monetary damages.

February 4, 2010
Page Six


Please be advised that Beaumont intends to file a Citizen Suit not less than sixty (60) days after the date of this Notice if satisfactory resolution of the aforementioned issues is not achieved.

Very truly yours,

Stephen G. Yusem

SGY/spo


cc:   Mr. David Ebby, President, Lower Merion Board of School Directors
      Douglas A. Zaenger, P.E., Project Manager, Foreman Program and Construction Managers
      Mr. Brud Foote, Boro Construction
      Mr. Douglas S. Cleland, Lower Merion Township Manager

# EXHIBIT A

# TOWNSHIP
# OF
# LOWER MERION

MONTGOMERY COUNTY



*DEPARTMENT OF BUILDING AND PLANNING*

75 E. Lancaster Ave.
Ardmore, PA 19003-2376
Telephone: (610) 645-6200
FAX: (610) 649-9598

August 11, 2006

**<u>REVISED</u>**

Ms. Jane Guelich, Secretary
Lower Merion School District Board of Directors
301 East Montgomery Avenue
Ardmore, PA 19003

**RE:  600 North Ithan Avenue, Harriton High School, Bryn Mawr, SD# 3538, Ward 6.**

Dear Ms. Guelich,

On June 28, 2006 the Lower Merion Township Board of Commissioners considered a Preliminary Land Development Plan prepared by Barry Isett & Associates, Inc. dated June 16, 2006 showing the construction of a new high school with a footprint of 200,236 square feet. Three (3) parking lots containing 469 passenger vehicle parking spaces and one parking lot containing twenty-five (25) bus parking spaces are also proposed. Six (6) tennis courts, an artificial turf multi-purpose field and fields for baseball, softball, soccer, field hockey and lacrosse and one practice field are also proposed. The listed conditions shall be complied with **prior** to recording the Final Plan by means of plan revision, completion or financial guarantee, unless specifically exempted. The Board approved the plan subject to the following conditions:

*Traffic and Circulation:*

1. The traffic study shall be revised to address the following: (TE) (PRFP)
   - Correlation of the student and faculty populations at the time of the existing traffic counts. Supporting documentation shall be submitted for the dates the traffic counts were collected.
   - No buses shall be stored on site during the construction phase. The ~~current~~ number of buses stored on the site shall be no more than 25.
   - Mitigation measures for those analyzed intersections that were significantly impacted.
   - The combination of student parking and parent pick-up/drop-off activity in the western driveway and within the proposed western parking lot.
   - The effect of the bus parking lot sharing the driveway with the student parking lot.
   - Whether a new traffic signal for the intersection of Ithan and Morris Avenues is warranted based upon the post-development traffic study, which shall be performed when the full student population is in session. If the Township Engineer determines that the signal is warranted, and subsequent to additional approval by the Board of Commissioners, the applicant shall prepare all necessary plans and permit applications for review and approval by PennDOT and shall install the signal. The applicant shall pay its fair share of the costs associated with installation of the signal, which fair share shall represent that proportion of traffic and traffic impacts contributed to the intersection by the entire enlarged population of Harriton High School.

- Whether mitigation measures for the intersection of Ithan and Montgomery Avenues are necessary, such as the addition of left turn advanced signal phasing. A post-development study shall be performed and evaluated by the Township Engineer who shall determine if the mitigation measures are warranted.
- Mitigation measures, including a left turn advanced signal phase for the anticipated delay of the south approach of Old Gulph Road to the signalized intersection of Ithan Avenue shall be fully evaluated in the revised study. At a minimum, the signal shall be optimized as directed by the Township Engineer.

2. To the greatest extent feasible, buses traveling east and west from the Matsons Ford Road bus depot shall use primary roads rather than minor roads. (B, P)

3. A traffic circulation signage and pavement marking plan shall be submitted and approved by the Township Engineer. "Stop" signs and bars, "Do-Not-Enter", "One-Way" (right), "One-Way" (left), and centerline and one-way arrow pavement markings shall be added to the parking lots and bus loop, in order to increase the efficiency of traffic circulation and to promote safe operation/vehicular movement associated with the design. (TE) (PRFP)

4. The applicant shall present the procedures to be used for the bus drop-off and pick-up of students and how the potential queuing will be adequately addressed in the design.

5. The applicant shall demonstrate that the travel lanes along the bus loop are wide enough to accommodate traffic when the buses are stacked along the driveway. (TE) (PRFP)

6. The applicant shall provide documentation regarding when the buses will be accessing/egressing the bus parking lot in order to verify the values in the traffic study. (TE) (PRFP)

7. Personnel to aid in the operation of the exit driveways shall be considered. A post-development study shall be performed for the driveways to determine whether personnel shall continue to be utilized for traffic management. (TE) (PRFP)

8. The applicant shall implement as many of the Travel Demand Management Strategies noted in the traffic study as practical. (TE) (PCO)

9. The width of the one-way driveway of the 142 space parking lot shall be reduced to twenty (20') feet at the eastern side. (TE) (PRFP)

10. Painted crosswalks shall be added in locations as directed by the Township. Details for high visibility, durable crosswalks shall be submitted. (TE) (PRFP)

11. The applicant shall work with staff to install a four-foot wide bike lane and a six-foot wide grass trail along the North Ithan Avenue frontage. (TE, P) (PRFP)

12. Direction signage and pavement markings shall be shown at the access/egress to the twenty-five (25) bus parking spaces. "Do-Not-Enter", "Bus Only", "Stop', "One-Way" signs and pavement markings shall be shown on the plan. The seven (7) bus spaces shown "parallel" parked shall be required to egress "in order" during the "AM" time period so as to minimize reverse movements. (TE) (PRFP)

13. The buses shall back into the angled bus parking spaces at the end of the day, which will minimize reverse movements in the "AM" time period. (TE, P)

14. The width of the parallel bus parking areas shall be dimensioned on the plan. The parallel bus parking spots shall be "striped-out." (TE) (PRFP)

15. Maneuverability shall be demonstrated for the "One-Way" parking stalls for the eighteen (18) buses considering the parallel bus parking and to reduce/eliminate backing during the AM hours. (TE) (PRFP)

16. The location of the paving and curb for the reserve twenty (20) spaces along the western access driveway shall be shown on the plan as referenced in condition no. 2 of the conditional use decision. The driveway aisle shall be shifted west to the location of the 20 spaces and the area occupied by driveway aisle shall be held in reserve. Adequate revisions to the design shall be made to accommodate bus circulation through the shifted aisle. (TE, P) (PRFP)

*Stormwater Management & Hydrologic Conditions:*

17. The applicant shall adhere to the requirements under the programmatic permit for construction activity under the Dam Safety and Encroachment Act from the State and the Army Corps of Engineers. (TE)

18. The rate control summary sheet shall be adjusted to compare the allowable two (2) year peak flow to the calculated five (5) year peak flow for "During Construction" as well as post development. (TE) (PRFP)

19. Stormwater management requirements for the "worst case" condition shall be analyzed for the during construction phase. Contractor staging areas, trailer areas and any bare soil cover shall be considered and used in the evaluation. Additional documentation shall be supplied to document the worst-case condition during construction. (TE) (PRFP)

20. The applicant shall provide additional documentation for certain stormwater calculations by providing the actual software output under separate cover to back up the values in the provided spreadsheet. Modifications to the outlet structures and/or basins may be required as directed by the Township Engineer. (TE) (PRFP)

21. Storm events up to the five (5) year frequency shall be controlled to the lesser of the two (2) year pre-development rate or the percentage of the pre-development rate as mandated for the sub-water shed. The rate control summary sheet shall indicate the allowable peak rate control as the pre-development two (2) year storm instead of fifty (50%) percent of the five (5) year storm. (TE) (PRFP)

22. The surface basins shall have a clear defined spillway and the required basin freeboard shall be clearly demonstrated. Additional documentation is required to demonstrate compliance. (TE) (PGP)

23. The applicant shall increase the recharge volume of basin 2.3 by twenty (20%) percent subject to site conditions and shall increase the recharge capacity of bio-filters "A" through "O" by 50% provided the plants proposed will survive. The "dead storage" volume/elevations shall be adjusted to provide a minimum of .75' of volume for the recharge, which is an increase of 50%. (TE) (PRFP)

*Ms. Jane Guelich*
*8/11/06 - Revised*
*Page 4*

24. The runoff crossing to the adjacent properties during the construction phase of the project shall be managed so that the water quality/quantity does not adversely impact the adjacent properties. Additional diversion berms and inlets/piping shall be noted to be provided as needed/or as directed by the design engineer or township so as to ensure acceptable conditions during the construction phase. (TE) (PGP)

25. The grading on the slope at the east side of the baseball field shall include a swale/berm to direct the runoff from "right field" to the inlet 2.2-18 as much as feasible. The limits/depth of the swale shall be as directed by the Township Engineer. (TE) (PGP)

26. The bio-retention facilities shall be increased in size to provide a minimum of six (6") inches of free board from the top of grade elevation to the "top of berm" elevation. Spot elevations shall be adjusted to provide the requested free board. (TE) (PGP)

27. A drop of at least (.2') across all manholes shall be designed for all sanitary and storm sewers in order to account for head loss through the structures. The profiles and plans shall be adjusted to accommodate the change to the inlet invert and outlet invert at each structure. (TE) (PGP)

28. The adequacy and integrity of any existing storm sewer to be re-used in the final design or that is critical to the proper functioning of the stormwater management facility shall be demonstrated. Capacity calculations and video inspection of key storm sewers shall be submitted. (TE) (PRFP)

29. Adequate protection shall be provided for any surface retention/detention system with a water level of four (4') feet or more during storm events, as directed by the Director of Building and Planning. (TE) (PGP)

### *Tree Protection, Landscaping and Lighting:*

30. The applicant shall install six foot high cyclone fencing around the 78-inch red oak and the groupings of trees adjacent to the bus queue and on the southern side of the 142 space parking lot during construction and site restoration or as directed by staff. (TE, TA) (PGP)

31. The applicant shall adjust the proposed grading to preserve the 30-inch beech and large red oak (caliper not specified on plan) on the western side of the site and the specimen 30-inch red oak on the eastern side of the site above the baseball field. (TE, TA) (PGP)

32. The applicant shall provide additional 3.5 inch to 4 inch caliper trees to soften and screen the ball stop system along the entire length of the baseball field along North Ithan Avenue. The applicant shall also work with staff on the aesthetics of the poles and shall investigate the feasibility of removing netting between games. If removing netting between games is not feasible, the netting shall only be in place during ~~baseball season~~ the season of scheduled events. ~~the parameters of which shall be at the discretion of the Director of Parks and Recreation.~~ (TA, P) (PRFP)

33. The applicant shall increase the size to 3.5 inch to 4-inch caliper of all of the deciduous shade trees located along the entrance driveways and the three parking lots. (P) (PRFP)

34. The applicant shall increase the size of 473 of the deciduous and evergreen shrubs, as depicted on the landscape plan. (P) (PRFP)

*Ms. Jane Guelich*
*8/11/06 - Revised*
*Page 5*

35. The applicant shall increase the size to 10-12 feet in height of 92 of the required evergreen trees, as depicted on the landscape plan. (P) (PRFP)

36. The minimum planting standards chart shall be revised to accurately depict the plantings provided on the landscape plan. (P) (PRFP)

37. The planting plan shall be revised in accordance with Natural Features Code Sections 101-9, 101-5B, Zoning Code Section 155-155-167.7, conditions and waivers herein and shall be submitted with the Final Plan. (P) (PRFP)

38. The footings for the light standards shall not conflict with the stormwater basins. (TE, B) (PRFP)

39. Light intensity shall be shown on the lighting plan to the property line to the east.. (B) (PRFP)

40. The lighting plan, including illuminance patterns, shall be revised and approved by the Director of the Building and Planning Department. Lighting shall be designed to shield the source of illumination and to prevent glare on adjacent properties. Fixtures shall be full cut-off. (B) (PRFP)

*Construction Phasing:*

41. A demolition phasing plan shall be submitted to and approved by staff prior to recording the Final Land Development Plan. (TE) (PRFP)

42. An NPDES Permit must be obtained from the Montgomery County Soil Conservation District prior to issuance of any permit. (TE) (PGP)

43. A detail of all retaining walls in Phase 2 of the project shall be submitted and approved. Calculations shall be submitted for all walls with clear heights of four (4') feet or more or with surcharge loading. (TE) (PGP)

*Utilities*

44. The applicant shall investigate burying the utilities along North Ithan Avenue. (TE, P)

45. The applicant shall demonstrate that there will be no more of an increase in sewage flows over 800 gallons per day, shall install an on-site surge tank or shall provide inflow and infiltration corrective measures to critical Township sewer lines as directed by the Township as necessary to compensate for the added sewage flows to the system by the development. (TE, PW) (PRFP)

*Standard Plan Items:*

46. Contours shall be included to indicate the limits of the existing swales/streams. The Township flood plain limits shall be shown within two hundred (200') feet of the development. (TE) (PRFP)

47. Depressed curbing shall be indicated at the new permanent driveway access locations. (TE) (PRFP)

*Standard Conditions of Approval:*

48. The applicant shall comply with the conditional use conditions imposed by the Board of Commissioners. (P)

49. The location of the fire hydrants and the fire access location and width shall be approved by the Fire Marshall. (FD) (PRFP)

50. The mean grade of the structure shall be calculated and shown on the Preliminary Plans. The architectural plans shall be coordinated with and shall comply with the grading proposed. (TE) (PRFP)

51. A planning module must be approved by the Township, the City of Philadelphia and DEP. (TE) (PRFP)

52. An As-built Plan shall be submitted following construction indicating the amount of impervious surface constructed and documenting satisfaction of the recharge requirements required by code. (P) (PER)

53. The Township Engineer shall approve the Improvement Construction and Grading Permits. Revisions shall address the Township Engineer's June 19, 2006 review letter. (TE) (PGP)

54. New and existing buildings shall have approved address numbers, building numbers or approved building identification placed in a position that is plainly legible and visible from the street or road fronting on the property. The address numbers shall be a minimum of four (4) inches (102mm) high with a minimum stroke width of 0.5 inch (12.7mm). (P) (PCO)

55. Any changes to the approved plans shall require the submission of an as-built plan prior to the issuance of the Certificate of Occupancy. Building and Planning staff can waive this requirement if the changes are determined to be insignificant. (P) (PCO)

56. The Final Plan, complying with all applicable requirements, shall be filed with the Department of Building and Planning within twelve (12) months from the date of approval by the Board of Commissioners. (P)

57. A copy of the revised plan shall be submitted with any changes highlighted and accompanied by a letter indicating how each requested revision has been addressed. (P)

58. The owner will make payment of fees and expenses of the Township's professional consultants who perform services on behalf of the Township with respect to these plans and the work contemplated thereunder and will establish and maintain with the Township those escrows for the payment of such fees required by Township Code, or as otherwise may be deemed appropriate by the Township and School District. Owner agrees that any statement from the Township for such fees shall be paid within a period of 45 days.

59. Applicant shall make payment of the Township Engineer's and/or Clerk of the Works' inspection fees within 45 days of presentation.

60. The property owner(s) shall comply with all applicable Lower Merion Township ordinances and laws regardless of specific mention herein to which the School District is required to adhere.

*Ms. Jane Guelich*
*8/11/06 - Revised*
*Page 7*

In addition, the Board **approved** the following waivers:

1. A partial waiver of Natural Features Code Section 101-9B(2), to not provide a planted island every twelfth parking space provided the linear islands in the parking lots remain.
2. A partial waiver of Natural Features Code Section 101-9A(1), to not provide the required number of plants provided the sizes of certain trees are increased as directed by staff.
3. A partial waiver of Stormwater Management Code Section 121-5B(4)(A), to permit the applicant to provide some rate controls for the 50 and 100-year storms during construction, but not to the extent required by the Code.

Please have a Final Plan prepared which should be either 15"x 18", 18"x 30" or 24"x 36" in size to include three (3) mylar and six (6) paper prints incorporating the required certifications, engineering data and Conditions of
Approval - as well as the date by which all public improvements will be done.  Please see the enclosed memo concerning financial guarantees.

Upon receipt of the Final Plan and satisfactory financial guarantee, the Township Engineer and Secretary shall sign the Final Plan as required for recording purposes, and you shall be notified to pick up the plan for recording.  Prior to recording, the plan must be certified by the Montgomery County Planning Commission.

The Subdivision and Land Development Ordinance requires that each subdivision or development plan be recorded in the office of the Montgomery County Recorder of Deeds within 90 days after final approval.  You are also advised that in addition to the stated Conditions of Approval you must comply with all other applicable Township ordinances and other laws governing your subdivision.

Please acknowledge your acceptance of the above conditions by signing and returning this letter within 30 days.

Very truly yours,

*Christopher Leswing/amc*

Christopher Leswing, PP, AICP
Assistant Director, Planning

CL/tr

cc:   Bob Duncan, Director of Building & Planning
      Kevin Bowers, Pennoni Associates
      Barry Isett & Associates, Inc.

TO:  Township of Lower Merion:

I hereby acknowledge and accept receipt of the conditions of approval for the property at 600 N. Ithan Avenue.

_____                    _8/24/06_
Jane Guelich                                  Date



# PUBLIC IMPROVEMENT GUARANTEES

*Township of Lower Merion*

If public improvements are required as a condition of subdivision or land development approval, then such improvements must be completed or a financial guarantee must be posted with the Township to ensure the completion of the improvements, in accordance with Article V of the Pennsylvania Municipalities Planning Code.   When improvements are required, *no final subdivision or land development plans will be signed by the Township Engineer or and Township Secretary for filing with the County until either the work is completed to the satisfaction of the Township Engineer, or a satisfactory guarantee is posted with the Township.*

## PROCEDURES FOR POSTING A GUARANTEE

1. Applicant submits to the Planning Division an engineer's estimate of the cost of the work to be done, or an actual estimate from a contractor.

2. If a water main extension or a hydrant is required, a guarantee for this work must be posted with Aqua PA. The applicant must furnish to the Planning Division written verification from the water company that a sufficient guarantee has been posted.

3. The Township Engineer will review all estimates (for work other than by the water company) and determine the total amount to be guaranteed.  This figure will include an amount for inspections and fees and an additional 10% for contingencies as required by Act 247.

4. The Township will accept Letters of Credit, escrow accounts, bonds, cash, checks or other such guaranty as may be approved by the Township Solicitor as guarantees.  In all cases, agreements must be signed by the applicant and both the guarantee (other than cash or check) and the signed agreement must be reviewed by the Township Solicitor.  The Planning Division has standard forms for the agreements.

5. The applicant is required to state a date in the agreement and on the Final Plan by which the improvements are to be completed. The Township Engineer will review as to the reasonableness of the time allowed. The expiration date of any Letter of Credit or other guarantee must be signed no sooner than one year beyond the date stated on the plan for completion of improvements.

6. The Township charges a $105 fee for the filing of the agreement. The applicant is billed after the filing.

*continued on other side.............*

## *PROCEDURES FOR RELEASE OF GUARANTEES*

1.    When some or all of the improvements have been completed, the applicant should send a letter to the Assistant Director of Planning, stating specifically what work has been done and requesting either a partial or total release. The Township Engineer will inspect the work and make a recommendation to the Board of Commissioners concerning the amount to be released. (The recommendation on partial releases will take into account the amount needed to complete the remaining improvements). The Building and Planning Committee of the Board of Commissioners will review releases and make recommendations to the full Board. The Board of Commissioners will act on recommended releases at its regular meeting, the third Wednesday of every month. (The August meeting is the first Wednesday of the month). The letter from the Township Engineer authorizing release is usually sent to the financial institution within a week after the Board meeting.

*If you have any questions on the above, please call the Planning Division at 610-645-6140.*

# TOWNSHIP OF LOWER MERION
*Department of Building and Planning*

## MEMORANDUM

TO:        Interested Parties

FROM:    Andrea M. Campisi, Senior Planner

DATE:    April 23, 2003

RE:        Approval Letters

RECEIVED

AUG 1 4 2006

BUSINESS MANAGER

---

Enclosed is the approval letter for your project. As you may be aware, the Township, in an effort to ensure the enforcement of all conditions, includes the initials of the Department responsible for ensuring compliance after each condition. In some cases, more than one department may be responsible, therefore, more than one set of initials will appear. All departments noted will receive copies of this letter so that they can assume their enforcement responsibilities for this project.

The key to the abbreviations is as follows:

P – Planning Division
B – Building Division
PD – Police Department
PW – Public Works
TE – Township Engineer
TA – Township Arborist
TS – Township Solicitor

Additionally, in an effort to ensure that all Township Departments are aware of when a particular condition must be met, an abbreviation indicating the appropriate time for ensuring compliance will also be noted after each condition.

The key to the new abbreviations is as follows:

**PRFP – Prior to Recording the Final Plan**
**PGP – Prior to Grading Permit Issuance**
**PBP – Prior to Building Permit Issuance**
**PCO – Prior to Certificate of Occupancy Issuance**
**PER – Prior to Escrow Release**

If you have any questions, please call the Planning Division at (610) 645-6115.

# EXHIBIT B



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**BUREAU OF WATERSHED MANAGEMENT**

| OFFICIAL USE ONLY |
|---|
| ID # _____ |
| Date Received _____ |

**RECEIVED**

OCT 3 1 2006

**M.C.C.D**

## NOTICE OF INTENT FOR COVERAGE UNDER THE GENERAL (PAG-2) NPDES PERMIT
### OR
## APPLICATION FOR AN INDIVIDUAL NPDES PERMIT FOR STORMWATER DISCHARGES ASSOCIATED WITH CONSTRUCTION ACTIVITIES

**READ THE STEP-BY-STEP INSTRUCTIONS PROVIDED IN THIS PERMIT APPLICATION PACKAGE BEFORE COMPLETING THIS FORM.**

☐ 1 acre to less than 5 acres of disturbance with a point source discharge    ☒ 5 acres or larger disturbance

**PLEASE PRINT OR TYPE INFORMATION IN BLACK OR BLUE INK.**

| CHECK APPROPRIATE BOX | GENERAL ☒ | | INDIVIDUAL ☐ | |
|---|---|---|---|---|
| APPLICATION TYPE | NEW ☐ | RENEWAL ☐ | | REVISED ☒ |

**SECTION A  E&S PLANNING REQUIREMENTS**

1. Total Project Area (Acres): __50.02__    Total Disturbed Area (Acres): __50.02__

2. Project Name

   Harriton High School Construction (Phase II & III)

3. Project Description

   Demolition of existing high school complex and construction of new high school, parking lots, driveways, athletic fields, and utilities.

   ☐ Residential Subdivision     ☐ Sewerage/Water System     ☐ Private Road/Residence
   ☐ Commercial/Industrial       ☐ Public Road                ☒ Government Facility
   ☐ Utility Facility/Transmission ☐ Recreational              ☐ Remediation/Restoration

4. Please provide the latitude and longitude coordinates for the center of the project. The coordinates should be in degrees, minutes and seconds (dd mm ss.ss) Check the collection method used to determine the lat and long coordinates. See the instructions for a description of the collection methods.

   Latitude: __40__ °/ __02__ '/ __26__ "    Longitude: __85__ °/ __18__ '/ __54__ "

   Collection Method:  ☐ EMAP  ☐ HGIS  ☐ GISDR  ☒ ITPMP  ☐ GPS  ☐ WAAS  ☐ LORAN

   Check the horizontal reference datum (or projection datum) employed in the collection method. EMAP and HGIS (PNDI) have known datum and do not require checking here.    ☐ NAD27   ☒ NAD83   ☐ WGS84 (GEO84)

   Enter the date of collection if the lat and long coordinates were derived from GPS, WAAS or LORAN. _____ mm _____ dd _____ yyyy

5. U.S.G.S. Quad Map Name __Norristown, PA__

6. Estimated Timetable for Major Construction Activities:  (Phased projects only)

| Phase No. or Name | Description | Total Area | Disturbed Area | Start Date | End Date |
|---|---|---|---|---|---|
| 1 | Construction of temporary facilities & field renovations | 50 ac. | 11.0 ac. | 5/06 | 9/06 |
| 2 | Construction of new high school | 50 ac. | 25.65 ac. | 3/07 | 9/09 |
| 3 | Demolition of existing high school | 50 ac. | 36.54 ac. | 9/09 | 9/10 |

3930-PM-WM0035   Rev. 1/2006

---

7.   Existing and Previous Uses of the Land Proposed for Construction (use separate sheet if necessary):

Existing Land Uses:   ☐ Agriculture   ☐ Forest/Woodland   ☐ Barren   ☐ Urban   ☐ Brownfield   ☒ Other

Description: High School

Previous Land Uses:   ☒ Agriculture   ☐ Forest/Woodland   ☐ Barren   ☐ Urban   ☐ Brownfield   ☐ Other

Description: 

---

8.   Potential Pollutants:  (Submit the following data if soil contaminant, geology or past or present land use provides a potential for contaminated runoff from the project site)   N/A ☒   Use additional sheets if necessary.

| Pollutant | Concentration w/Units | Source | Sample Type | Date(s) / Number of Samples |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |

Clearly indicate the source/location of the potential pollutant(s) on the Erosion and Sediment Control (E&S) Plan drawings, and describe in the E&S plan narrative what measures are proposed to manage and control discharges of these pollutants to eliminate the potential for pollution to surface waters of the Commonwealth.

---

9.   Describe the type, source and location of any fill materials:  **Be sure to read the instructions before completing this section.**

Clean Fill is uncontaminated, non-water soluble, non-decomposable, inert, solid material.  The term includes soil, rock, stone, dredged material, used asphalt, and brick, block or concrete from construction and demolition activities that is separate from other waste and recognizable as such.  The term does not include materials placed in or on the waters of the Commonwealth unless otherwise authorized.

**Check the appropriate box**

☒   All of the fill material placed on, or removed from the project site is Clean Fill, that, upon the performance of environmental due diligence, was found to <u>have not been</u> affected by a spill or release of a regulated substance.

☐   Some or all of the fill material placed on, or removed from, the project site is Clean Fill that has been affected by a spill or release of a regulated substance.  Any person placing this fill on a property must use form FP-001 to certify the origin of the fill material and the results of analytical testing to qualify the material as clean fill.  A copy of this form must be retained by the owner of the property receiving the fill (waste/spoil areas and cut/borrow areas).

---

10.   Summary of E&S Control BMPs as detailed in the attached E&S Plan:

Rock construction entrances, topsoil stockpiles, sediment basins, silt fencing, inlet protection, and slope-protectionmatting are the Best Management Practice Facilities proposed to control sediment pollution before, during, and after the earth disturbance activities.  Non-impervious areas will be permanently stabilized with seeding.

---

11.   Stormwater Discharges to (during construction):

Waters of the Commonwealth ☒        Municipal Separate Storm Sewer ☒        Private Storm Sewer ☐

| 12.   Receiving Water/Watershed Name: Mill Creek | Name of Municipal Storm Sewer Operator: Lower Merion Township | Name of Private Storm Sewer Operator: |
|---|---|---|
| 13.   Chapter 93 Receiving Water Classification: TSF | Secondary Water: Mill Creek | Other: |

3930-PM-WM0035   Rev. 1/2006

## SECTION B.  APPLICANT INFORMATION

| Applicant's Last Name | First Name | MI | Phone | 610-645-1851 |
|---|---|---|---|---|
| Lower Merion School District | | | FAX | |

| Organization Name or Registered Fictitious Name | | Phone | |
|---|---|---|---|
| | | FAX | |

| Mailing Address | City | State | ZIP + 4 |
|---|---|---|---|
| 301 East Montgomery Avenue | Ardmore | PA | 19003 |

| Co-Applicant's Last Name | First Name | MI | Phone |
|---|---|---|---|
| | | | FAX |

| Organization Name or Registered Fictitious Name | Phone |
|---|---|
| | FAX |

| Mailing Address | City | State | ZIP + 4 |
|---|---|---|---|
| | | | |

## SECTION C.  SITE INFORMATION

Site Name

Harriton High School

Site Location

600 North Ithan Avenue

| Site Location -- City | State | ZIP+4 |
|---|---|---|
| Rosemont | PA | 19010 |

Detailed Written Directions to Site

Take I-476 South to I-76 W Exit 16 towards Valley Forge.  Take the exit toward PA-23/Conshohocken.  Turn left onto Matsonford Toad and go to the intersection with Old Gulph Road.  Turn left onto Old Gulph Road and go to the intersection with North Ithan Avenue.  Turn left onto North Ithan Avenue.  The Harriton High School is on the left less than a quarter mile from the intersection with Old Gulph Road.

| County | Municipality | City | Boro | Twp |
|---|---|---|---|---|
| Montgomery | Lower Merion Township | ☐ | ☐ | ☒ |
| | | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ |

## SECTION D.  OTHER POLLUTANTS; PREPAREDNESS PREVENTION AND CONTINGENCY (PPC) PLAN

1. Will chemicals, solvents, other hazardous waste or materials that have the potential to cause accidental pollution during earth disturbance activities be used or stored on site?   Yes ☒   No ☐   **(If yes, a PPC Plan is required)**

- 3 -

3930-PM-WM0035   Rev. 1/2006

---

## SECTION E.  POST CONSTRUCTION STORMWATER MANAGEMENT (PCSM) PLAN
### See the Attached Instructions on how to Complete This Section

All PCSM plans should be designed to maximize infiltration technology, eliminate or minimize point source discharges to surface waters, preserve the integrity of stream channels, and protect the physical, chemical and biological qualities of the receiving water.  In addition to these water quality design features, all PCSM plans must comply with local water quantity or flood control requirements.

Check those that apply:

☐  The attached PCSM plan was developed to be consistent with an Act 167 Stormwater Management Plan approved by the Department after July 2001.

☐  The attached PCSM plan was developed to be consistent with existing local ordinances that satisfy the requirements of an MS4 (NPDES Permit to Discharge Stormwater Through a Municipal Separate Storm Sewer System) permit.

☒  The attached PCSM plan was developed to employ water quality design features and BMPs that will manage any net increase in stormwater runoff volume resulting from the DEP recommended 2-year/24-hour frequency storm.

---

1.  Please include the following as part of the PCSM plan:

   a.  A written narrative.

   b.  Plan drawings including construction details.

   c.  Identification and location of post construction stormwater management BMPs.  Such BMPs should address:
   - Infiltration
   - Volume and rate control
   - Water quality treatment

   d.  Operation and maintenance procedures.

   e.  Supporting calculations.  (Supporting calculations and measurements are not required if the disturbed areas will be revegetated or otherwise stabilized with pervious material.)

---

2.  Explain how post construction stormwater runoff volume will be managed if BMPs will not infiltrate the total net increase in stormwater runoff volume.  (Net increase volume = Post construction runoff volume minus Pre-construction runoff volume):

   ☒  N/A (check N/A only if BMPs **will infiltrate** all of the Net Change in Runoff)

---

3.  Are there existing post construction stormwater management (PCSM) BMPs at this location/site?   ☐ YES   ☒ NO

   Do you plan to use or expand any of these existing PCSM BMPs?   ☐ YES   ☐ NO

   List the existing PCSM BMPs that will be used or expanded.

3930-PM-WM0035   Rev. 1/2006

<table>
<tr><td colspan="4">4.   <strong>SUMMARY TABLE FOR SUPPORTING CALCULATION AND MEASUREMENT DATA</strong><br>See the Instructions on how to Complete This Section</td></tr>
</table>

☐   Check this box if supporting calculations and measurements are NOT required in accordance with Section E.1.e on the preceding page.

Design storm frequency <u>2</u>
Rainfall amount <u>3.2</u>        inches

| | Pre-construction | Post Construction | Net Change |
|---|---|---|---|
| Impervious area (acres) | 13.255 | 15.702 | 2.447 |
| Volume of stormwater runoff (acre-feet) without planned stormwater BMPs | 5.2918 | 6.4168 | 1.1250 |
| Volume of stormwater runoff (acre-feet) with planned stormwater BMPs | ████████ | 2.030 | -0.905 |
| Stormwater discharge rate for the design frequency storm | 44.2 | 13.1 | -31.1 |

### SUMMARY DESCRIPTION OF POST CONSTRUCTION STORMWATER BMPs

5.   In the lists below, check the BMPs identified in the PCSM Plan.  Indicate the function(s) of the BMP by checking **DR** for the function detention/retention; checking **IF** for infiltration/recharge; or checking **WQ** for water quality treatment.  More than one function may be checked for a BMP.  List the stormwater volume and area of runoff to be treated by each BMP type. If any BMP in the PCSM Plan is not listed below, describe it in the space provided after "Other".

| BMP | Function(s) | | | Volume of stormwater treated | Acres treated |
|---|---|---|---|---|---|
| ☒ Wet ponds | ☐ DR | ☒ IF | ☒ WQ | 0.476 | 50.00 |
| ☐ Constructed wetlands | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Retention basins | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Detention basin | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Underground detention | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Extended detention basin | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Water quality fore bay | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Infiltration trench | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Infiltration bed | ☐ DR | ☐ IF | ☐ WQ | | |
| ☒ Infiltration basin | ☐ DR | ☒ IF | ☒ WQ | 1.168 | 17.06 |
| ☐ Porous pavement | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Dry well | ☐ DR | ☐ IF | ☐ WQ | | |
| ☒ Bio-infiltration areas | ☐ DR | ☒ IF | ☒ WQ | 0.232 | 6.67 |
| ☐ Rain gardens/Bio-retention | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Vegetated filter swales | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Sand/organic filters | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Natural area conservation | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Filter/buffer strips | ☐ DR | ☐ IF | ☐ WQ | | |
| ☒ Surfaces drain to vegetated areas | ☒ DR | ☒ IF | ☒ WQ | 0.232 | 6.67 |
| ☐ Downspouts to vegetated areas | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Green roofs | ☐ DR | ☐ IF | ☐ WQ | | |
| ☒ Cisterns/rain barrels | ☐ DR | ☒ IF | ☒ WQ | 0.153 | 2.23 |
| ☐ Oil/grit separators | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Water quality inserts/inlets | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Street sweeping | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Other _____ | ☐ DR | ☐ IF | ☐ WQ | | |
| ☐ Other _____ | ☐ DR | ☐ IF | ☐ WQ | | |

3930-PM-WM0035   Rev. 1/2006

| SECTION F.  CONSULTANT FOR THIS PROJECT | | |
|---|---|---|
| Last Name | First Name | MI |
| Massie | Justin | Q |
| Title | Consulting Firm | |
| Project Manager | Barry Isett & Associates | |
| Mailing Address | | |
| 85 South Route 100 & Kressler Lane; P.O. Box 147 | | |

| City | State | ZIP+4 |
|---|---|---|
| Trexlertown | PA | 18087-0147 |

| Email | | | | |
|---|---|---|---|---|
| jmassie@barryisett.com | Phone | 6103980904 | Ext | 313 |
| | FAX | 610 481 9098 | | |

### SECTION G.  PERMIT COORDINATION AND COMPLIANCE REVIEW

Does the applicant (owner and/or operator) have or require any other Department permit or approval for this project?

☐ Yes   ☒ No    If yes, list each permit or approval, permit number, and description.

---

Compliance History Review:

Is/was applicant in violation of any permits issued by DEP?    ☐ Yes    ☒ No

If yes, list each permit that is/was in violation and provide compliance status of the permitted activity (use additional sheets to provide information on all permits).

Permit Program:

Permit Number:

Brief description of Non-Compliance:

Steps taken to achieve compliance and date(s) compliance achieved:

Current Compliance Status:   ☒ In-Compliance     ☐ In Non-Compliance

If the applicant is not in compliance with any environmental law or regulation, permit, order or schedule of compliance of the Department, provide a narrative description of how the applicant will achieve compliance including the appropriate milestones.

## SECTION H:  CERTIFICATION

<u>Applicant Certification</u>

I certify under penalty of law that this application and all related attachments were prepared by me or under my direction or supervision by qualified personnel to properly gather and evaluate the information submitted.  Based on my own knowledge and on inquiry of the person or persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate and complete.  The responsible official's signature also verifies that the activity is eligible to participate in the NPDES permit, and that BMP's, E&S Plan, PPC Plan, PCSM Plan, and other controls are being or will be, implemented to ensure that water quality standards and effluent limits are attained.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment or both for knowing violations pursuant to Section 309(c)(4) of the Clean Water Act and, 18 Pa. C.S. §§4903-4904.

| **Applicant** | **Co-Applicant (if applicable)** |
|---|---|
| _Scott Shafer_ | |
| Print Name and Title of Person Signing | Print Name and Title of Person Signing |
| _(610) 695-1970_ | _(   )_ |
| Telephone Number of Person Signing | Telephone Number of Person Signing |
| _[signature]_ | |
| Signature of Applicant | Signature of Co-Applicant |
| _6/13/06_ | |
| Date Signed | Date Signed |

Please note below the name, address and telephone number of the individual that should be contacted in the event additional information is required.

Name:  Justin Masie, PE - Barry Isett & Associates

Address:  85 South Route 100 & Kressler Lane, P.O. Box 147, Trexlertown, PA 18087-0147

Telephone:  ( 610 ) 398-0904 ext. 313                    FAX: ( 610 ) 481-9098

Notarization:

Commonwealth of Pennsylvania

County of _Montgomery_

Sworn to and Subscribed to Before Me This

_13th_ Day of _July_ , 20 _06_

_[signature]_

Notary Public

NOTARY
SEAL
COMMONWEALTH OF PENNSYLVANIA

NOTARIAL SEAL
ANNA MARY O'HORA, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires May 28, 2008

My Commission Expires: _____

# EXHIBIT B

# EROSION AND SEDIMENT POLLUTION CONTROL PLAN NARRATIVE

## FOR



## HARRITON HIGH SCHOOL RECONSTRUCTION

Lower Merion Township, Montgomery County, Pennsylvania

## PREPARED BY



**BARRY ISETT & ASSOCIATES, INC.**
Consulting Engineers & Surveyors

| | | |
|---|---|---|
| HOME OFFICE: | P.O. Box 147, Trexlertown, PA 18087-0147 | 610-398-0904 |
| BRANCH OFFICES | 828 W. Main Street, Norristown, PA 19401 | 610-278-0166 |
| | P.O. Box 2562, Hazleton, PA 18201-1064 | 570-455-2999 |

Revised October 27, 2006
July 11, 2006

BIA #137604.0TC

# TABLE OF CONTENTS

A.  Erosion and Sediment Control Narrative

B.  Reference Maps & Supporting Data

C.  Worksheets and Calculations

# A – EROSION AND SEDIMENT CONTROL NARRATIVE

137604.0TC

Revised October 27, 2006
June 30, 2006

# EROSION AND SEDIMENT POLLUTION CONTROL PLAN NARRATIVE

## FOR

# HARRITON HIGH SCHOOL RECONSTRUCTION

## Lower Merion Township, Montgomery County, Pennsylvania

The following narrative was prepared in accordance with the Erosion and Sediment Pollution Control Program Manual, prepared by the Pennsylvania Department of Environmental Protection (PA DEP) and dated March 2000. Each narrative item is in reference to the same item number in the E & S Control Plan Technical Review Checklist. This report also includes reference material, supporting data, calculations, and the applicable standard worksheets.

### General Project Information

Location:  Located at existing Harriton High School campus on the north side of Ithan Avenue in Lower Merion Township, Montgomery County, Pennsylvania

Facility Owner:  Lower Merion School District
301 East Montgomery Avenue
Ardmore, PA 19003

Person(s) Responsible for Construction and Maintenance of Earthmoving Operations and Erosion and Sediment Pollution Controls:

No contractor has been selected at this time.

The contractor must notify the Montgomery County Conservation District (MCCD) in writing and by telephone 7 days prior to commencement of any earthmoving activities and set a date for an on-site pre-construction meeting.

**102.4(b)(3)     Erosion and Sedimentation Control Plan Preparer and Qualifications**

| | |
|---|---|
| Plan Preparer : | Justin Q. Massie, P.E. |
| Formal Education: | Pennsylvania State University<br>Civil Engineering Curriculum<br>Attended from August 1995 to May 1999<br>Bachelor of Science |
| Other Training: | Southeast Pennsylvania Association of Conservation Districts (Bucks, Chester, Delaware, & Montgomery Counties), Engineer's Workshop, December 9, 1999 & February 7, 2002 |
| Current Employer: | Barry Isett & Associates, Inc.<br>(610) 398-0904 |

Former Employer:

Recent Erosion and Sedimentation Control Plans Prepared:

1. Allentown Municipal Golf Course Channel Restoration, Phase III
   City of Allentown, Lehigh County
   Lehigh County Conservation District

2. CLIU-21 Maintenance & Parking Facility
   Lehigh Township, Northampton County
   Northampton County Conservation District

3. Perkiomen Valley Middle School
   Lower Frederick Township, Montgomery County
   Montgomery County Conservation District

4. Vernfield Elementary School
   Franconia Township, Montgomery County
   Montgomery County Conservation District

**102.4(b)(5)(i)     The Existing Topographic Features of the Project Site and the Immediate Surrounding Area**

All existing topographic features of the project site and immediately surrounding areas (including contours, streams, wetlands, 100-year flood plains, receiving watercourses, roads, buildings, utilities, etc.) have been clearly depicted on the provided Erosion and Sediment Control Plans. A north arrow, graphic scale, and map legend are also provided on the plans.

A U.S.G.S. 7.5-minute quadrangle Location Map, with the project area delineated, is included in this report.

**102.4(b)(5)(ii)   The Type, Depth, Slope, Locations, and Limitations of the Soils**

The types of soils and their boundaries have been shown on the plans.  The soils, defined by the Soil Conservation Service, may be found on the site:

GnB2 – Glenelg Silt Loam 3-8% Slopes

The Glenelg series consists of moderately deep to deep, well-drained silt loams that are gently sloping to moderately steep. These soils have a moderately permeable subsoil, but permeability is moderately rapid in the substratum.  The available moisture capacity is moderate.  The gentle to moderately steep slopes are the main limitations to their use for development.

GsB2 – Glenville Silt Loam 3-8% Slopes

The Glenville series consists of deep, moderately well drained or somewhat poorly drained silt loams or silty clay loams that are nearly level and gently sloping.  Permeability is moderately rapid in the surface layer, moderately slow in the subsoil, and moderate in the substratum.  The available moisture capacity is high.  A seasonal high water table is a limitation to use of the soils for development.

MdB – Made Land, schist and gneiss materials, sloping
MdD – Made Land, schist and gneiss materials, strongly sloping

Made land is extensive and varied in Montgomery County.  It consists of areas where earthmoving during development has removed or altered the characteristics of the original soils.  Specific physical and chemical properties and interpretations for an area of Made Land cannot be listed.

Refer to the included Soil Map and the Soils Information Fact Sheet for additional information.

**102.4(b)(5)(iii)   The Characteristics of the Earth Disturbance Activity, Including the Past, Present, and Proposed Land Uses and the Proposed Alteration to the Project Site**

The site currently consists of an existing high school campus, which it has been for over 50 years.  The site also is under Phase 1 construction which includes a new track, temporary bus loop, and temporary parking lot which have been provided in preparation of this project.  The project proposes the construction of a new high school on the site with accompanying parking, driveways, walkways, athletic facilities and accessory structures. The Limits of Construction/Disturbance are shown on the provided Erosion and Sediment Control Plans.

Proposed contours/grades, utilities, waterways, storm water management facilities, roads, buildings, and other improvements are shown on the plans.  A graphic scale, map legend, and north arrow have been provided on the Erosion and Sediment Control Plans.

**102.4(b)(5)(iv)   The Amount of Run-off from the Project Area and Its Upstream Watershed Area**

### PRE-DEVELOPMENT ANALYSIS

The pre-development analysis can be broken into thee overall drainage areas (Areas 1, 2 and 3). Area 1 is located along the eastern property boundary and drains in an easterly direction down a slope to the adjoining properties. Area 2 is located in the center of the site and is routed through Existing Basin 2 in the center of the site. Some of that water is discharged through the existing 18" pipe to the other side of Ithan Avenue. Additionally, a portion of the Basin 2 routing overtops the roadway and drains into existing Basin 3. Area 3 is located on the west of the property and drains to Existing Basin 3.

### POST-DEVELOPMENT ANALYSIS

The same three Areas were analyzed in post-development. Area 1 has been reduced in area but otherwise left undisturbed. Area 2 has been divided into six drainage areas which each contain a proposed basin. Subarea 2.1 utilizes an underground detention (along with stone storage for infiltration) system in the area of the track to reduce flows to the downstream pipe network. Subarea 2.2 utilizes an underground detention system in the area of the baseball field to reduce flows to the downstream pipe network. Subarea 2.3 utilizes an underground detention system (along with storage for infiltration) in the area of the proposed bus loop to handle flows from roof and pavement areas in order to reduce flows to the downstream pipe network. Subarea 2.4 utilizes an above ground basin just west of the proposed tennis courts to reduce flows from the student parking lot. Subarea 2.5 utilizes an above ground basin just south of the proposed tennis courts to reduce flows from the tennis court area. Subarea 2.6 is the large basin, which replaces Existing Basin 2, that all the upstream Area 2 subareas drain into. The discharge out of Basin 2.6 can be divided into a portion that routes through a 12" pipe under Ithan Avenue and a portion that is routed into Basin 3. The Existing Basin 3 shall be expanded. Most of Area 3 is captured in the basin. However, a small bypass area does exist. The area 3 captured and bypass areas are combined to determine the total Area 3 discharge.

**102.4(b)(5)(v)   The Location of Waters of the Commonwealth and their Classification**

The site is considered a tributary to the Mill Creek, which is classified as "Trout Stream Fishery" (TSF) according to Chapter 93.

**102.4(b)(5)(vi)   A Written Depiction of the Proposed BMPs**

Rock construction entrances, sediment basins, topsoil stockpiles, silt fencing, inlet protection, and slope-protection matting are the Best Management Practice Facilities proposed to control sediment pollution before, during, and after the earth disturbance activities. Non-impervious areas will be permanently stabilized with seeding.

**102.4(b)(5)(vii)  Staging of Earthmoving Activities and Installation of BMPs**

## CONSTRUCTION SCHEDULE

Approximate Starting Date for Construction: March 2007
Approximate Ending Date for Construction: September 2010

## PHASE II

### Stage 1 - Pre-Construction Procedures

A.  All earth disturbance activities shall proceed in accordance with the
following sequence.  Each stage shall be completed before any
following stage is initiated.  Clearing and grubbing shall be limited only
to those areas described in each stage.  At least seven days before
starting any earth disturbance activities the operator shall invite all
Contractors involved in those activities including but not limited to:  the
landowner and all appropriate municipal officials and a representative
from the MCCD for an on-site pre-construction meeting.

B.  The Pennsylvania One Call System, Inc. must be notified at least three
days prior to construction for locating existing utilities.

C.  The Contractor shall install construction safety fencing where
necessary to control access to the site.

D.  All structures associated with the construction of sediment removal
facilities must be available on-site prior to any earthmoving.

E.  Until the site is stabilized, all erosion and sedimentation BMPs must be
maintained properly.  Maintenance must include inspections of all
erosion and sedimentation BMPs after each run-off event and on a
weekly basis.

### Stage 2 - Erosion and Sediment Pollution Control Facility Installation

A.  Install Construction Entrances in location indicated on Plan Sheets
ES-1 and ES-2.

B.  Install Silt Fencing in areas as indicated on Plan Sheets ES-1 and ES-
2.

C.  Install tree protection fencing and temporary construction fencing.

D.  After installation of protective barriers and prior to earth disturbance,
notify the Township Engineer of intent to begin earth disturbance.
Township Engineer must be notified for inspection fourty-eight (48)
hours prior to installation of piping.

E. Install sanitary bypass from the existing sanitary manhole located just northeast of the proposed Sediment Basin B to the existing sanitary manhole located in North Ithan Avenue. This sanitary bypass must be complete and operational prior to earth disturbance to construct Sediment Basin B.

F. Install Temporary Sediment Basin B with temporary riser and clean out stake. Stabilize the basin immediately. Install storm system from Inlet 3-34 to Endwall 3-38. Temporarily block Flared End Section 3-41 in Sediment Basin B.

G. Install Temporary Sediment Basin A with temporary riser and clean out stake. Install the portion of the waterline from N. Ithan Avenue through Sediment Basin A. Stabilize the basins immediately. Install storm system from Manhole 2.6-23 to Endwall 2.6-30 in Basin A as is required to reconnect Phase 1 storm sewer into sediment basin. Temporarily block Endwall 2.6-40 in Sediment Basin A.

Stage 3 – Site Construction

A. Install contractor staging area in the northwest corner of the site.

B. Install utilities adjacent to western property line from N. Ithan Avenue up to existing pavement.

C. Install storm system from Inlet 2.1-1 to existing manhole 2.1-14. Grade temporary sumps around inlets upstream of proposed school. Modify the outlet structure plate and structure tops to the final phase stormwater Basin 2.1 configuration. Install filter soxx around the sumped inlets upstream of the school location. Immediately, stabilize area within filter soxx with compost and seeding.

D. Install temporary storm system from Temp Inlet 1 to Temp Manhole 4. Maintain positive drainage away from Existing Gymnasium and Proposed School and towards the temporary storm system.

E. Strip, stockpile, and stabilize topsoil in the building (starting with the basement area) and eastern parking area as indicated on Plan Sheet ES-1. Perform all rough grading related to the construction of the new school building and parking lot. Stockpile all soil north of the proposed school.

F. Install storm system from Inlet 3-2A to Endwall 3-28. Install the 50,000 gallon rainwater reclamation tank connected to Manhole 3-4A. Install the roof drains into Manhole 3-4A as needed by the plumber.

G. Install and stabilize temporary diversion channel DC-1 to Inlet 3-16.

H. Install storm system from Inlet 2.2-1 to Manhole 2.2-10. Install inlet protection immediately.

I. Prepare the subgrade and construct the subbase and base course for the driveway and parking lot east of the new school.

J. Begin construction of the school building.

K. Install the remainder of the water, sewer, electrical/communications, and gas utilities to the new school location as indicated on the plans.

L. Install the landscaping along the western property boundary at the first planting season following the installation of the utilities.

M. Strip, stockpile, and stabilize topsoil for the dock and temporary driveway area west of the proposed school. Perform all rough grading related to the construction of the dock and temporary driveway area. Stockpile all soil north of the proposed school.

N. Prepare the subgrade and construct the subbase and base course for the dock and driveway area west of the proposed school.

O. Final grade, spread topsoil, and stabilize all remaining disturbed areas.

## PHASE III

### Stage 1 – Improvements Around School

A. Construct fire department access lane at the building perimeter.

B. Construct temporary and permanent walkways around the proposed school to the loading dock area, the eastern parking lot, and the temporary bus loop.

C. Complete construction of eastern parking lot by installing wearing course, permanent signage and striping, landscaping, and lighting.

D. Strip, stockpile, and stabilize topsoil for the proposed CNG facilities and bus parking lot. Perform all rough grading related to the construction of the proposed CNG facilities and bus parking lot. Construct CNG facilities and bus parking lot with temporary drive connections for access to the dock area.

### Stage 2 – Demolition

A. Demolish the modular classrooms.

B. Demolish the "M" building.

C. Construct the permanent driveway including storm facilities from the loading dock to the existing bus parking area when the "M" building is demolished.

D. Demolish the remaining existing school buildings, walls, walkways, and utilities that comprise the existing high school campus.

E. Construct tree wells where indicated.

F. Expand the sediment basin A to the final stormwater configuration.

Stage 3 – Site Construction

A. Move soil stockpile to the portions of the western parking lot that require fill.

B. Install storm system from Inlet 3-8 to Inlet 3-11, from Inlet 3-1A to Inlet 3-3, and from Inlet 2.1-6 to 2.1-8. Install inlet protection immediately.

C. Construct the retaining wall north of the northern athletic fields. Construct the athletic fields north of the proposed school with all underdrains.

D. Install the sanitary connection from Sanitary Manhole 15 to Sanitary Manhole 19. When the new connection is made, the existing sanitary sewer line which was previously connected to the building may be demolished to Sanitary Manhole 20.

E. Install storm system from Outlet Structure 2.6-31 to Endwall 2.6-38. Install inlet protection as indicated immediately. Install outlet protection immediately.

F. Perform rough grading and install storm detention basin 2.5.

G. Perform rough grading and install storm detention basin 2.4.

H. Install storm system 2.4-1A to Endwall 2.4-15. Install the storm system from Inlet 2.4-16 to Endwall 2.4-20. Immediately install inlet protection as indicated. Immediately install outlet protection as indicated.

I. Strip, stockpile, and stabilize topsoil for the proposed western parking lot. Perform all rough grading related to the construction of the tennis courts and western parking lot.

J. Prepare the subgrade and construct the subbase and base course for the western parking lot.

K. Construct tennis courts and access walkways in western parking lot and to tennis courts.

L. Install storm system from Manhole 2.6-9 to Manhole 2.6-26.

M. Strip, stockpile, and stabilize topsoil for underground detention/infiltration basin 2.3. Perform rough grading and Installation

of underground detention/infiltration basin 2.3. Tie the roof drains from the southeastern portion of the building into Basin 2.3.

N. Strip, stockpile, and stabilize topsoil for the eastern driveway, western driveway, and proposed bus loop. Perform all rough grading related to the construction of the eastern driveway, western driveway, lacrosse field, and bus loop.

O. Prepare the subgrade and construct the subbase and base course for the eastern driveway, western driveway, and proposed bus loop.

P. Install landscaping along the new driveways and in the new bus loop area.

Q. Demolish the temporary parking lot located in the southeast corner of the site. Perform rough grading of the proposed baseball field. Construct baseball field with all associated facilities.

R. Install all remaining landscaping.

Stage 4 – Removal of the Soil Erosion Controls

A. After the entire site is stabilized, remove the filter fabric fencing and inlet protections. Convert the temporary sediment basins to the permanent detention basin by removing any accumulated sediment and removing the clean-out stakes, temporarily blocked outlets (Endwall 2.6-40 and Flared End Section 3-41) and riser pipes. Immediately after riser pipe is removed, install the permanent outlet structures. Install permanent landscaping in detention basin area.

B. Finish paving the parking area and driveways with final wearing course.

C. Remove any remaining BMP's once site is permanently stabilized.

Notes:
1. Disturbed area is considered stabilized when a uniform erosion resistant perennial vegetative cover of at least 70% of the disturbed area is established.

2. Immediately stabilize any areas disturbed by the removal of the soil erosion controls.

**102.4(b)(5)(viii)  Supporting Calculations**

**102.4(b)(5)(ix)  Plan Drawings**

The location and construction details of all temporary and permanent control measures and facilities proposed to be used on the project have been shown on Plan Sheets MES-1, ES-1, ES-2, MESF-1, ESF-1, ESF-2,

and ESD-1. The standard worksheets and calculations for the controls have also been included in this report.

**102.4(b)(5)(x)   Maintenance Program**

All erosion control facilities shall be checked after each run-off event to ensure that they are in good repair and working condition. Damage to any facility shall be repaired immediately.

Areas that contain sod shall be checked very carefully to ensure that joints between the sod strips are tight and secure. Where joint separation is in evidence, a careful inspection of each joint shall be made to determine whether undermining of the strips is occurring. If it is, the strips shall be rolled up, the subsurface shall be filled and graded as required, and the sod strips shall be relayed with tight joints and pegging.

Seeded areas that have washed away shall be filled and graded, as necessary, and then reseeded. A burlap or straw cover will be applied to retain seed until it has a chance to root properly.
The above procedure shall be repeated after each run-off event until no more signs of erosion are evident. At monthly intervals thereafter, inspections and necessary cleaning will be done.

Vegetation shall be mowed whenever necessary to maintain a pleasing appearance and discourage weed growth. All local regulations will be complied with.

Inspect inlet protections, rock filter outlets, and berms weekly, and after each run-off event, and clean and/or replace filter material if it is clogged. Silt that has accumulated shall be removed, allowed to dry, and then used as fill wherever required on the site.

Any dry fill hauled off-site must be taken to a location with an Erosion and Sedimentation Control Plan, which has been reviewed by the Montgomery County Conservation District (MCCD) for adequacy.

Trash that is removed from any of the control devices shall be disposed of at an approved municipal disposal area.

The installation and maintenance of the temporary control facilities will be the responsibility of the contractor. The temporary controls will be maintained in accordance with the PA DEP Program Manual Standards.

The PA DEP's regulations require a 70% uniform cover of erosion resistant perennial vegetative species be established over the disturbed area before a site can be considered to be permanently stabilized with vegetation. Until such time as the standard is achieved, interim stabilization and temporary erosion and sedimentation control measures and facilities that are used to treat the project run-off may be utilized.

The contractor is responsible for the removal of the temporary control

facilities once the site is permanently stabilized with vegetation.  The contractor shall also stabilize any areas disturbed by the removal of the soil erosion controls.

Once the site is permanently stabilized, the property owner will periodically check the storm sewer facilities, graded areas, and swales to observe any erosion problems that may be developing.  Any damaged areas should be repaired immediately.

General maintenance notes can be found on Detail Sheet ESD-1 in the Plan Drawings.

### 102.4(b)(5)(xi)   Recycling and Disposal of Construction Wastes

The Contractor is responsible to ensure that the proper measures for recycling or disposal of materials will be undertaken in accordance with Department regulations.  The operator shall assure that an Erosion and Sediment Control Plan has been approved by the local Conservation District and is being implemented and maintained for all soil and/or rock spoil and borrow areas, regardless of their locations.  Disposal sites must be approved by the local Conservation District.